DAUGHERTY *et al. v.* S. & W. CONST. CO., INC., *et al.*

(*Nashville*, December Term, 1953.)

Opinion filed March 3, 1954.

JOHN R. GILLILAND, and CANALE, GLANKLER, LITTLE, BOONE & LOCH, all of Memphis, and DENNEY, LEFTWICH & GLASGOW, of Nashville, of counsel, for Maryland Casualty Co.

J. H. CAMPBELL, of Franklin, J. E. TRAVIS and HARRY PHILLIPS, both of Nashville, amici curiæ.

JAMES M. GLASGOW and JACK WILSON, Assistant Attorneys General, for Roy H. Beeler, Attorney General.

THOMAS WARDLAW STEELE and VAL SANFORD, both of Nashville, for R. E. Daugherty, Sr., et al.

Mr. Justice Tomlinson delivered the opinion of the Court.

Taxpayers by means of this suit challenge the validity of an approximately $30,000 award made to the Maryland Casualty Company by the Tennessee Board of Claims, and to be paid with funds of the State. One member of the Board, Attorney General Beeler, dissented. The award was made under the supposed authority of Item 24 of Section 2A of Chapter 268 of the Public Acts of 1951. That chapter is the State Miscellaneous Appropriation Bill.

The insistence of the complainant taxpayers is, first, that under a proper construction of the aforesaid Section 2A, Item 24, the Board of Claims is not authorized to make this award and, second, if this section, properly construed, does purport to authorize the Board to make the award it did make, then Section 2A, Item 24, is unconstitutional in that it (a) amounts to a gratuity and (b) is class legislation prohibited by Article 11, Section

8 of our Constitution. The Chancellor sustained each of these contentions. Maryland Casualty Company has appealed. All litigants and amicus curiæ have furnished excellent and persuasive briefs.

Some considerable time prior to the enactment of Chapter 268 the Department of Highways and Public Works of Tennessee awarded a contract to S. & W. Construction Company for the building, etc., of a highway in Shelby County. It was awarded to this Company because its bid was quite substantially less than any other bid submitted. The prime contractor, S. & W. Construction Company, subcontracted a certain portion of this work to L. J. Lindsey. Lindsey executed a surety bond in the amount of the subcontract for the proper performance of his undertaking with Maryland Casualty Company as surety. Lindsey, the subcontractor, ran into unexpected physical difficulties in the construction of the road, and finally abandoned his contract. As a result, the prime contractor, S. & W. Construction Company, had to complete the subcontract. In so doing, it sustained a very substantial loss. Maryland Casualty Company, in accordance with the obligations of its surety bond, paid S. & W. Construction Company the amount of that loss.

The logical conclusion to be drawn from the enactment of Item 24, Section 2A, of Chapter 268 is that Maryland Casualty Company, S. & W. Construction Company and Lindsey, or one or more of the three, petitioned our General Assembly for reimbursement by the State of the loss sustained by reason of Lindsey's failure to carry out the obligations of his subcontract. This resulted in the appropriation carried in Item 24 of Section 2A of the 1951 Act. It is of controlling importance, therefore, to first ascertain from the face thereof—if it can be done—

what the intention of the Legislature was in the enactment of this section and its Item 24.

There are forty-four items in Section 2A. Each of these items is an appropriation of money payable out of State funds to the respective persons mentioned in the respective items, the appropriations being made "subject to the provisions of this Act and are referred to the Board of Claims for adjudication". The Board of Claims referred to is the State Board of Claims created by Chapter 73 of the Public Acts of 1945, and carried in the Code Supplement at Section 1034.1 et seq. An ascertainment of the purpose had in creating this Board and its functions may materially aid in the solution of the questions made.

By reason of Article I, Section 17, of our State Constitution suits to recover money from the State cannot be maintained "unless legislative authority therefor be affirmatively given." *Insurance Co.* v. *Craig*, 106 Tenn. 621, 629, 62 S.W. 155, 157. No such legislative authority has been given. To the contrary, such suits are forbidden by Code Section 8634. However, the Legislature has consented to the payment out of State funds of certain classes of claims, provided the merit and the true amount of such claims is first investigated and approved by the State Board of Claims. Such claims, when so approved, become liabilities of the State to the payment of which the Legislature has consented. Such is the function and limit of authority of the State Board of Claims.

The first paragraph of Section 2A of the 1951 Act, in so far as pertinent to our question, is as follows:

"*Be it further enacted,* That all appropriations

hereinafter made except those made for legislative expenses, for the use of departments and agencies of the State Government, or definite grants, or specific public uses and purposes, shall not be paid until the Board of Claims has first investigated each particular case and found specifically that the facts as determined by the Board fully warrant such payment and then, until after the Board has determined in favor of the claimant *all pertinent questions of law authorizing such payment* and until the Board, or a majority thereof, has approved the payment thereof in writing; * * * *but it is expressly provided that the inclusion of these items in this bill does not create any new liability against the State* * * *.''* (Emphasis supplied.)

Then there follows the forty-four items appropriating money in maximum specified amounts to the respective individuals mentioned in the respective items.

It is manifest from the face of the provision just quoted that the Legislature did not purport to be familiar with, or to determine, the merit in fact or law of any of the forty-four claims for which it undoubtedly had been petitioned to award money to the respective claimants. The Legislature, therefore, went no further than to direct its Board of Claims to ascertain the merit in fact of each claim and to determine '' all pertinent questions of law authorizing such payment'' thereof, and to direct its payment under the condition next to be stated if found meritorious and lawfully authorized.

The condition above referred to as ''next to be stated'' is the closing sentence of the first paragraph of Section 2A reading as follows: ''But it is expressly provided that *the inclusion of these items* in this bill *does not create*

*any new liability against the State* * * *." (Emphasis supplied.)

What did the Legislature mean by expressly providing that it, the Legislature, intended to ''not create any new liability against the State'' by including in this miscellaneous appropriation bill appropriations for each of the forty-four specific items mentioned? The inescapable answer is that the Legislature did not intend by the enactment of Section 2A, and its forty-four specific items that payment of any of these items be made other than those falling within one of the classes for which it, the Legislature, had previously consented that the State be liable when, and if, approved by the Board of Claims. These classes of claims are enumerated in the Act creating the Board of Claims, Section 1034.1 et seq., Code Supplement.

Prior to the enactment of Chapter 268 of the Public Acts of 1951 and its Section 2A, Item 24, the Legislature had never consented that the State be liable to pay contractors or their sureties in the building of public highways for losses sustained by reason of the fact that the contractors encountered unexpected physical difficulties in carrying out the obligations of their contracts with the State. But the 1951 Act, Chapter 268 provided that the Legislature intends to ''not create any new liability against the State'' in making the appropriation contained in Item 24 of Section 2A. Therefore, to sustain the award which the Board of Claims purported to make to the Maryland Casualty Company in this case would amount to nothing less than the sustaining of an award which the Board of Claims is not authorized to make.

The undoubted intention of the Legislature in the enactment of Section 2A, Item 24, was to direct the Board

of Claims to investigate this claim of S. & W. Construction Company and Lindsey and Maryland Casualty Company and if it is found that the claim falls within one of the specified classes and is found to have merit in fact, then to make an award in the proper amount within the limits of the appropriation made. Since this claim does not fall within any of these classes the award to Maryland Casualty Company was unauthorized. The Board of Claims erroneously construed the Act. Otherwise, it would not, we think, have made the award questioned here.

It is obvious that the construction which we necessarily place upon Section 2A, Item 24 eliminated the constitutional questions which would be raised if the Act could be given the construction placed upon it by the Board.

Let the decree of the Chancellor be affirmed with costs adjudged against Maryland Casualty Company.

LLOYD S. ADAMS, Special Justice, not participating.